(102 App. Div. 112.)

### KEATING v. COON.

(Supreme Court, Appellate Division, Fourth Department. March 1, 1905.)

1. MASTER AND SERVANT—DEFECTIVE APPLIANCES—DUTY TO INFORM MASTER.

Under Employers' Liability Act (Laws 1902, p. 1750, c. 600) § 3, providing that an employé shall not be entitled to compensation for injuries where he knew of the defects, and failed to give information thereof to his employer within a reasonable time, unless such defect was known to the employer, a servant was not barred of recovery as a matter of law because of his knowledge of the defect and his failure for two weeks after he knew of it to inform his employer, where there was evidence that the employer's superintendent had seen the defect at a time prior to the accident.

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—AGE OF PERSON INJURED—INSTRUCTIONS.

In an action for injuries to a boy 16 years of age, set to work at a dangerous machine, the jury should be charged to consider the boy's age and appearance on the question of contributory negligence, and on the question of how much instruction and care he was entitled to, and it is not sufficient to charge generally on the boy's duty to exercise reasonable care.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 687–689, 1184.]

McLennan, P. J., and Stover, J., dissenting.

Appeal from Trial Term, Oswego County.

Action by William Keating, by Nicholas Keating, his guardian ad litem, against S. M. Coon, as receiver of the Swits-Conde Company. From a judgment for defendant and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

F. T. Cahill, for appellant.
Elisha B. Powell, for respondent.

SPRING, J. The plaintiff, a lad 16 years of age, was injured October 16, 1902, in a machine known as a "carder" while in the employ of the defendant, and has brought this action pursuant to the employer's liability act to recover the damages which he sustained, and which resulted in the amputation of his right arm above the elbow. About two months before the injury he applied to the defendant for work, and was

turned over by the superintendent to a boy of 14 years, named Coonan, to be instructed how to operate the machine. Each machine—for there were several in the room—consisted, first, of a creel on which 60 spools of fluffy, coarse thread were attached. Next to the creel, and about 18 inches off, was the guide plate, an iron plate 5 feet by 12 inches, and which contained the holes, 60 in number, for the thread to pass through from the spools. Still further along, and about two inches from the guide plate, were two wooden feed rollers, two inches in diameter and of the same length as the plate. One roller was above the other, with a small space between, and they were covered with cloth filled with small wire teeth like a horse carding brush. The thread was caught by these rollers and pulled through to a tumbler or cylinder just beyond the rollers, and which was a large roller covered with leather, and containing many sharp wire teeth or prongs. This tumbler made about 400 revolutions a minute. The further mechanism of the carder it is not important to consider. The Coonan boy stayed with the plaintiff nearly half a day, instructing him in the operation of this machine. His chief duty was to poke the threads, as they came from the spools, through the opposite holes in the guide plate, in order that they might be taken up by the rollers. The plaintiff testified that the threads would clog the rollers, and when that occurred he was instructed to reach his hand over the guide plate and push the threads through the rollers towards the tumbler. While he was engaged in this work his hand was caught by the wire prongs of the tumbler, drawing it through between the small rollers, tearing off and lacerating the flesh of his arm, and rendering amputation necessary. He testified also that one end of one of these rollers was apt to work up at times, and it was in that condition when the accident occurred, thus giving room for his hand and arm to go in between them. The negligence which the plaintiff seeks to impute to the defendant is the failure to instruct him adequately in the use of this machine, and also the failure to supply a reasonably safe machine or appliance for him to carry on the work intrusted to him.

The main propositions of the case involved questions of fact, and as there certainly was no preponderance of evidence in favor of the plaintiff, we should allow the verdict to stand; except for errors which we think were prejudicial to him. The court, after reading to the jury a provision of the employer's liability act, designed to prevent an employé from recovering of his employer for personal injuries by reason of a defect known to the employé, and which he failed within a reasonable time to give information of to his employer or superintendent, charged the jury as follows:

"It appears here that Mr. Haythorn was the superintendent of the carding room; that his place of business was in that carding room; and it doesn't appear upon this trial by any evidence that he was informed or had any knowledge or information that the machinery was out of order. Therefore, if the machine was out of order for the period of two weeks, and the boy knew it—if the boy knew it and understood it—it was his duty to inform the superintendent, to the end that he might put the machine in proper order and repair. It was his duty to give him the information within a reasonable time, and I charge you as a matter of law that if the boy knew of the defect, understood the danger, knew this machine was out of repair and

ought to be fixed, the fact that he allowed two weeks to expire without giving such information to the superintendent, that the waiting so long a period was an unreasonable period of time for him to wait; that within that time, before the injury occurred, he should have given the superintendent notice that the machine was out of order. Waiting two weeks is too long. It is an unreasonable time to wait under the circumstances, where the superintendent is right in the same room."

Later in his charge he summarized the proposition in this manner:

"If the plaintiff understood that the machine was out of order and dangerous for two weeks prior to the accident, there can be no recovery, because it would be clearly unreasonable to omit informing the superintendent during that period of time."

The plaintiff testified that Haythorn, the superintendent in charge, attempted to adjust this machine, when one of the rollers was heaved up as at the time of the accident. That at another time Haythorn showed him how to push the thread through the guide plate. It did not go through, and the plaintiff put his hand back of the plate, and tucked the threads in through between the rollers, and Haythorn watched the performance, saying nothing. If Haythorn knew the rollers were out of gear, and the plaintiff was aware that he possessed that knowledge, then it was not incumbent upon this lad to inform the superintendent of the defect. Section 3, Employer's Liability Act, Laws 1902, p. 1750, c. 600. At least we cannot say as matter of law that his omission for two weeks to do this in the circumstances of this case and in the light of his own evidence absolutely bars a recovery by him. In the abstract the proposition of law stated by the court may be unexceptionable. But it was for the instruction and enlightenment of the jury in this particular case, and was to be construed by them with the facts before them, and it failed to include essential items of testimony which had an important bearing on its interpretation, and the jury ought to have been so instructed.

Later the counsel for the plaintiff excepted "to that part of the charge in which you charged as a matter of law that waiting two weeks was unreasonable, and I ask you to charge that the jury must take into consideration the boy's age, and his appearance on the stand here, upon the question of contributory negligence, and upon the question of how much instruction and care he was entitled to upon the part of the superintendent. The boy's age and appearance may have been important factors in measuring his own conduct, and the necessity for more definite instructions as to the operation and danger of the machine, and consequently we think the plaintiff was entitled to have the jury instructed as requested. The court, however, responded: "I cannot change my ruling and holding to the effect that he is called upon to exercise reasonable care—such reasonable care as a person endowed with those qualities to a reasonable degree would have exercised under those circumstances—I can't change that," to which an exception was taken. The charge as given does not meet the question. The plaintiff was 16 years of age when the accident occurred, and he was before the jury. They were entitled to know how the question of contributory negligence and the necessity of more careful instruction were affected by reason of his age and appearance. These concrete, tangible

elements the counsel was properly trying to have the jurors comprehend. A proposition couched in general language may do for a textbook, but jurors simply have in mind the evidence of the particular case, and they need enlightenment as to the law pertaining to that case, and a mere abstract generalization is more apt to mystify than to impart information.

For these reasons the judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. Judgment and order reversed, with costs to appellant to abide the event.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide event, upon questions of law only; the facts having been examined, and no error found therein. All concur, except McLENNAN, P. J., and STOVER, J., who dissent.